Call the next case. Case number 10-3753, re the Marriage of Rice. Okay, would the lawyers please introduce themselves to the court. May I please report, Nicole Caprera on behalf of the husband, counsel Murphy. Good morning, Justices, Maureen Murphy on behalf of the wife, Madonna Rice. Okay, I understand you're going to save some time for your rebuttal. I do, Your Honor. Alright, Judge Lampkin is also sitting on this case, but she had to go somewhere, but she will listen to the tapes. Today, we're before you, Your Honor, because of one entity. This entity is not the husband, nor the wife, nor the trial courts, nor the judges. It's the Illinois Department of Health and Family Services, and it's arbitrary and unilateral actions to ignore and rewrite court orders. While it's undisputed that child support always lies within the sound discretion of the trial court, the IDHFS adheres or disregards court orders at their unilateral whim, as in this case. As in this case, the IDHF routinely tenders notice regarding child support obligations and arrearages to the obligors, only a short time later to tender notice to the same obligor that the IDHFS no longer intends to comply with prior court orders, and the obligor now owes ten times the prior arrearage amount, or is, in this case, tens of thousands of dollars in additional and unexpected interest. But eventually, eventually it gets to a judge, and eventually the judge decides what is the amount owed, and in this case, the judge said... And that was the trial court error in applying 505A. 505A should not be used as a legal basis to deem a paragraph, such as paragraph E, echo of the Article 3 of the Marriage Summon Agreement, as being voided under forceful. 505A should be used when determining a child support amount, as the trial court did in 1990. Well, let's say the paragraph was valid when it was entered as part of the judgment. So it's valid then. That doesn't mean that it can't be superseded by subsequent legislation. That is binding on everyone, isn't it? And so we have the guidelines that were passed, and the guidelines are contrary to that paragraph that you've just cited to us. But I don't believe the guidelines are contradictory, Your Honor. When Judge Flanagan in 1990 went to an evidentiary hearing on husband's child support obligations, she at that point in time applied 505A in determining the child support amount, and determining that $700 per month was his statutory guideline support. And so... So we're not talking about... Let's say we agree with that part. I think your client was seeking to have the reduction by a quarter each time a child reached emancipation. Why would a reduction in a quarter be the right method to reach the right amount? That's because when the parties entered in 1993, when the judgment for dissolution was entered that incorporated the marital settlement agreement, the marital settlement, by way of separate paragraph, decided, and the court adopted that agreed order between the parties, that the termination dates and the emancipation conditions are agreed to by the parties, that MSA is considered as a contract. Sure it is. That contract... But the contract is between the husband and wife. And once you get the state involved, the state says, you know, who else is a very important party here? The children. And once the state gets involved on behalf of the children, whatever contract existed between the husband and wife can be set aside. And isn't that just what the judge did here? The trial judge in 2010? Yes. He incorrectly set aside this judgment. Under contract law, when you have a specific and unambiguous, very clear and unambiguous term, such as when the termination date was supposed to apply to each child, that specific contract term was never asked by either party. When wife first filed her first motion to increase and modify child support in 1989, she did not ask the court to modify the judgment in relation to the termination dates. She did not ask to modify the emancipation conditions. She merely asked to modify the total sum amount of child support that she was being tendered on a monthly basis. My client filed a motion to reduce, temporarily reduce and or abate. The trial court at that point in time followed 505A when Judge Flanagan entered her order. And therefore, that order, the trial judge in 2010 cannot reach back in time and say, we're now going to look at all of these facts de novo, and I'm going to redetermine what the child support amount was. From the point of 1990 all the way until today, wife has never asked this court or any other to modify that order of $700. Well, let's say the $700 sticks. I thought the dispute here was that the reduction that your client was seeking as each child reached emancipation, and the dispute centers on that, that that reduction, if it's contrary to the guidelines, simply will not be followed. I will point, Your Honors, though, back to the original MSA in which the amount was $1,250. And in that order, if we follow the MSA terms, and just for argument's sake, this order was never modified downward, the amount of $3,250 was going to be paid for the last child for the last two years of her minority. And really, under our circumstances, it would have been $175. In either case, if the courts want to take judicial notice, either one of those amounts might have been or could have been below the statutory guidelines, but it's really not now the function or at the discretion of the trial court to now try and reach back and say, we need to evaluate this situation de novo. We are now going to reach back and second-guess what the trial court did in 1990. We're going to reach back and try and unilaterally dismiss the marital settlement agreement terms. No, but I don't see the courts doing that. I see the courts saying, that was the marital settlement agreement in 1993. 83. 83. And now we have to view it in a different light, in light of new legislation that has been passed, and it would be no different than if the marital settlement agreement said that emancipation is effective at the age of 15, but the law says now that it's at 17. No one is going to say that too bad for these kids. These kids are emancipated at age 15, and we're not going to apply the law that applies to every other child who will be emancipated as of 17 or 18. And it's the same thing for child support. Well, I do believe that the argument of latches here is special to this particular argument. Here we have a husband who the Illinois Department of Health and Family Services, up until 2009, adhered or followed the marital settlement agreement termination provisions. They sent husband notices. The husband, to his detrimental reliance, relied upon his payments to the IHDFS to satisfy these child support obligations. And again, wife has never come in to ever dispute that $700 was a guideline support order. And I do think the fact that Sweeters is so clear and concise to say that we're a marital settlement agreement, where the terms are clear and unambiguous, the court must give them their ordinary and natural meaning. And also, I want to point out, in Sweeters, it was a little bit the opposite of the situation. In that situation, wife wound up having custody of the children when the judgment was entered, and subsequently wound up custody was switched over to dad. The marriage settlement agreement agreed to an upward deviation of the guidelines to say that husband was going to pay above guideline support, and when dad took custody, mom's argument was this should no longer apply because I'm no longer the residential parent. And the court unequivocally said no, the marriage settlement terms do apply. You contracted for those terms, and regardless, you have to live by those terms. All that means is that the courts are going to benefit the child when the child is benefited, but the courts will not deprive the child of support that it's entitled to have under the law. I would like the court to take judicial notice. There are no children at this point in time. The youngest child is 30 years old. And we're now at the point of, again, up until 2009, father was told, was tendered notice, he had this as his child support obligation, and that marriage settlement agreement was applied. All right. So what you're saying is really the 1990 order had no effect on the reduction provision. That's what you're saying. That's what you're telling us. Correct. Paragraph B, bravo. So therefore, no court order could have any effect on the reduction provision. That's what you're coming to. No, that's not true. Where the distinction here is, is the subsequent 1990 order only modified the support amount, and it was completely silent as to the termination provisions. At the time of judgment, an order of support was also entered at the time of judgment. That order of support mirrored the judgment in that the termination provisions were provided at the time of judgment. Well, when the first child became emancipated, was there any obligation to go to court and get the thing straightened out? There was not. It was being followed by the Illinois Department of Health and Family Services. So why, if my client is relying on a judgment, the MSA is a judgment because it was incorporated into the judgment, he's relying on the terms of the judgment. There's been no subsequent order that specifically modified the termination dates, and moreover, the Illinois Department of Health and Family Services are complying with that order. So I really don't understand how the trial court in 2010 can now place the burden on my client and say he should have come in for a motion to modify if he expected the marital settlement agreement to be applied. I mean, isn't that what's normally done in the matrimonial arena? Come in for a reduction? No, that you want to preserve the rights that you have under the marital settlement agreement by pointing out those rights to the court that is considering a motion that could infringe upon those rights. That if he wants the courts to follow the marital settlement agreement, he had an obligation to bring it up to the trial judge. Here, this is what the marital settlement agreement requires to happen, and we're asking the court to enforce it. But he never asserted that. Why would he have to assert at a point that's already being followed and, moreover, is already being judged? Well, it comes before the court for a reason. It comes before the court on behalf of the wife seeking arrearages or seeking something. I will correct you, Your Honor. Go ahead. It came before you, Your Honor. Not before me, not before us. It came before the trial court shortly after the notice was received by husband in 2009 that the Illinois Department of Health and Family Services was no longer choosing to adhere to and follow the judgment or the marital settlement agreement. So actually, the husband brought a motion to clarify. What about that motion that he filed that he never actually got a ruling on? You mean in 1993? No, it was in 2000 or so. There's so many things. He was acting pro se, and he filed a motion. I think he filed a motion to modify child support and wound up never proceeding on the motion to modify. That was, again, for a downward deviation. When you bring up latches, it almost seems to go the other way, that latches isn't something that should be to the detriment of the children or of the support the wife was entitled to on behalf of the children, but latches against the husband when he failed to assert his rights under the marital settlement agreement. And I think that there's a distinction there as well, because under latches, you do need to show two factors. And the first factor is that there was a lack of diligence. And in this case, husband never exercised a lack of diligence in the sense that when there's a judgment entered, he relied on the judgment. And therefore, especially when you take into consideration the fact that the Illinois Department of Health and Family Services, who is the gatekeeper for child support, is also adhering to that marital settlement agreement. And then the second is that if there's an actual injury or prejudice to my client, the husband, and if $50,000 in additional interest charges and almost $20,000 in additional rearage charges is an injury, I really don't know what is. And moreover, if my client was prejudiced. But at this point in time, we are now talking about 27 years after the judgment was entered. And from even 1990, when the last court order was entered, we're talking about 21 years. He does not have financial records. He does not have documents. And again, I think it's an incorrect application of 505A, and the trial court incorrectly tried reaching back to try and pose that on the trial court at the time that Judge Flanagan held an evidentiary hearing on that matter. We better give the other side time. Good morning, Justices. May it please the Court. There's one thing that counsel totally ignores in her argument, is that in 1983, when the parties were divorced, there were no guidelines for child support. Every circuit court used their own rule of thumb in calculating what child support should be. So when counsel argues in her brief that these were statutory guidelines, well, they weren't. Those guidelines didn't go into effect, passed by the legislature, until September 12th of 1984, after the parties were divorced. The other issue with the marital settlement agreement, and this was known by the appellant, because he was a practicing attorney in Cook County at that time and practiced in the divorce division. So he knew there were no guidelines in 1983, too. The marital settlement agreement said the child support would be 42%, which at that time was the rule of thumb guidelines in Cook County, before the statute was enacted, and that the minimum child support payment was to be $1,250 a month. Minimum. So by the time that 1983 ended, the year the parties were divorced, the appellant was already in arrears. And that's something that really needs to be paid attention to. The heart of the matter is that Mr. Rice was ordered by the court, October 23rd, 1990, to pay $700 a month for four children. It is incumbent upon him to have made that $700 a month payment and not to unilaterally reduce it at the time that the trial court deviated. I won't use the word deviated. At the time that the trial court reduced the child support from $1,250 a month to $700 a month, Mr. Rice was already in arrears over $21,000. Was this a unilateral reduction? When you are never in compliance with the orders for child support and when you have been in arrears from the time of the divorce until including through today's date, I would say that's a unilateral reduction. The other thing that counsel brought up was laches. This is in no way the remotest example of laches that I have seen as it's directed towards my client. Mrs. Rice, the mom, was in court so many times with the state's attorney's office. And to point out that between 1990 and 1993, there were 16 court appearances. Do you think that one of those times the appellant, an attorney, would have said to the court, I want to now talk about the marital settlement agreement and the reduction of 25% every time one of my children becomes emancipated? No. As correctly pointed out, when he filed his second petition to reduce child support, he did nothing with it. It was left he. No order was entered, no petition to withdraw, no order saying that this will be withdrawn. Finley, which is an Illinois Supreme Court case, was very clear when they ruled that the child support payments are not to be presumed to be equally divided between children, that whatever the child support payment is, in this case $700 a month, will remain at $700 a month until the youngest of the four children would be emancipated. I have a listing of every payment that Mr. Rice made to either the Child Support Enforcement Division and subsequently to the State Disbursement Unit. There is no question that the payments that he did make were recorded. If he doesn't have records anymore, it's irrelevant because the payments that he made to those two agencies are of record, and they are in the record presented in my brief. Now, with respect to statutes, statutory law, statutes are not suggestions, Mr. Justices. They are orders. They are telling people, this is what you're going to do. Not if you feel like doing it, if you think about doing it. This is the statute. This is what you're going to do. In 1984, the statute said, we are now going to have child support guidelines in Illinois, and for four children, those guidelines will be 40%. That has not changed in all this time. Also, the statute says, and it was upheld by Wisawati, by the Supreme Court. Just so it's clear, though, if it's 40% for four children, I think the marital settlement agreement provided for 42% or some amount. It did. So he was paying above the guidelines, the proposed guidelines. The fault here doesn't lie in the initial amount that he was obligated to pay as a percentage of his net income, but in the effort to try to reduce that amount by the quarter for each child as he or she reached emancipation. That's true, Justice, because in 1983, as I said, there were no guidelines. But if there had been, he would have been above it. If there had been guidelines of 40%, whether he would have been above it or not, I'm assuming that was the case, 42%. But the courts have also said that child support guidelines are stepping off points. And let's not forget that guidelines are just that. And Mr. Rice, the appellant, said, well, here's the dollar figure of $312.50 per child. And that's what I'm going to take off every time one of my children turns the age of 18. Well, the marital settlement agreement said that was a minimum amount. It's right in there. So my question that I think to myself then is... How did that, even the figure of $1,200 and a reduction by $300 or so, how did that work into the reduced amount of child support that he was obligated to pay at $700, which wouldn't have covered all four kids anyway? Well, that is what I don't know because I did not represent the appellee at that time back in 1990. But I don't know if at that time arrearages were added in, if the state's attorney's office was handling the matter for Mrs. Rice, her mom. So I really don't know how they figured it. I do know that on October 23, 1990, that was the same day Mr. Rice filed his petition, first petition to reduce child support, and the orders were entered on the same day. So, again, when that order was entered, he was already over $21,000 in arrears. Now, it stands to reason that when you don't make regular child support payments and months and months go by, that the arrearage is going to grow. It also stands to reason that so is the interest, which is now mandatory from May 1, 1987. How, if I'm answering your question, Judge, how it was determined how much money Mr. Rice was going to take off each time a child was emancipated was that he figured he had to pay $700 a month for the four children, and he was going to reduce it by 25% every time one of those children turned 18. The trial court was absolutely... That would have been at odds with the marital settlement. Well, it certainly would have been at odds, and it also was in violation of the statute. Again, not a suggestion. All right. What I would be asking this court to do is find that interest on arrears comports with the statutory law and that interest on arrears should be of May 1, 1987, that statute, to find that the $700 a month was a lump sum. It was supposed to be paid until the very youngest child became emancipated, at which time the arrearage and interest was to be paid, that arrears on the unpaid support also be calculated, that mother has a vested right, and as far as the children no longer being children anymore, this court held in Davenport that a mother could collect child support and arrears when that child was 44 years old. Have you any other questions, Justices? Thank you. Rebuttal. Opposing counsel hit on the point that it's her argument that this was a unilateral reduction and that somehow this was a unilateral pro-rata reduction. In no way was this a unilateral reduction. Again, I mean, it's clear law that when the MSA is clear and unambiguous, it must, and it's clear and concise, it must be adhered to by the courts. The parties freely contracted in 1993 regarding the termination dates. Those termination dates were never modified by any subsequent order. And therefore, when husband relied on the MSA or the judgment, when he wanted those termination dates and he wanted the child support to be reduced, he was also backed up by a governmental agency, that being the Illinois Department of Health and Family Services. So therefore, it would be impossible for him to have made any unilateral reductions because he never directly paid the wife. I also want to point out, as counsel correctly did, litigation in this case really was from a short time period, about two and a half years, in 1990 to 1993. And that's because husband, by the mere nature of his profession, concentrated in personal injury. 1989 was not a financially solid year for husband, and therefore he fell behind in child support payments. But if the court can take judicial notice of the fact, really after the 1993 period, there was no further litigation between the parties because the husband was dutifully paying his child support through the state, on time, and continually to dwindle and get rid of those past arrearages. And that's just the nature of his employment. I mean, so he is greatly prejudiced. If there's anything now, unlike for Latchis to apply in the Smith case, it's very different from the Smith case. The Smith case said Latchis doesn't apply here because husband had the benefit. If he would have used the Illinois Department of Health and Family Services, he would have had the benefit of a record of all his payments. And that's exactly what my client did. Here, why he's prejudiced is he does not, if the court wants to reach back and say, well, this isn't a guideline support or it should have been more, he does not have any financial records to provide the court at this time to make that de novo ruling. So I think that Latchis is extremely applicable to this case. And I think, again, I go back to the beginning of my argument. The real entity here that this court needs to decide is whether the Illinois Department of Health and Family Services can unilaterally choose to either follow judgments or not follow judgments and then have these poor obligors detrimentally rely on these administrative orders to their detriment, as my client has done here. I'm asking the court at this point to reverse and remand the trial court and ask that the MSA terms be adhered to. Thank you. Well, you've given us an interesting issue to deal with, and we'll take the case under advisement. The court will be adjourned.